THE CITY OF FREEPORT

*v.*

JOHN T. ISBELL.

1. CONTINUANCE—*of the diligence required.* After the reversal and remanding of a cause for a new trial, the defendant asked for a continuance on the ground of not being prepared for trial, and the affidavit filed in support of the motion stated that the party had made diligent efforts to ascertain the

christian names of the witnesses since the order remanding the cause was filed, but failed to show when that diligence began, and what those efforts were, or that he caused inquiries to be made as to the whereabouts of a particular witness. The remanding order was filed two weeks before the commencement of the term: *Held*, that the application was properly overruled, due diligence requiring immediate action after the time when notice was given of the filing of the remanding order.

2. EVIDENCE—*to impeach claim of permanent injury.* On the trial of an action brought by the plaintiff against a city to recover damages for a personal injury caused by the unsafe condition of the sidewalk, from which the plaintiff fell into an excavation in the night time, not properly guarded, the plaintiff produced evidence tending to show he was suffering from an ailment known as Bright's disease of the kidneys, and that this was caused by the fall. The plaintiff was asked, on cross-examination, if at a former trial of the cause he had endeavored to show that he had any difficulty or trouble with his kidneys, or any peculiarity in his urine, which the court refused to allow. He was then asked if he would furnish the defendant with some of his urine for chemical examination, to which an objection was sustained, when he was asked if he refused to answer the last foregoing question, to which the court sustained an objection: *Held*, that in the several rulings the court erred, the evidence tending to show that a chemical and microscopic examination of the urine might determine with reasonable certainty whether the plaintiff had such disease or not.

3. When a plaintiff on the second trial of a cause for a personal injury claims, for the first time, an injury to his kidneys in consequence thereof, the defendant will have the right to show that no such claim was made on the first trial. Such a fact, unless explained, is proper for the consideration of the jury in determining whether the claim is well founded or is an after-thought.

4. When a plaintiff claimed an injury to his kidneys by a fall, in a suit against a city, caused by the unsafe condition of a sidewalk, and on the trial proved that albumen was found in his urine, which was a symptom of Bright's disease, but not sufficient of itself to prove its existence, and that other examinations, microscopic, etc., would be necessary to arrive at certainty as to the fact, it was *held*, that the defendant had the right to put before the jury the best evidence attainable on the subject, and if in the power of the plaintiff, it was his duty to furnish the means of making the proper tests, and that it was the duty of the court to permit his refusal to do so to be shown to the jury as a fact tending to show that his claim was a fiction which an examination would expose.

APPEAL from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. O. C. LATHROP, Mr. HENRY C. HYDE, and Mr. JOHN C. KEAN, for the appellant.

Mr. J. M. BAILEY, and Mr. JAMES I. NEFF, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an action against the city of Freeport, by appellee, to recover damages for an injury alleged to have been caused to plaintiff by the neglect of the city in not properly providing for the safety of travelers in one of its important streets.

The plaintiff, not being a resident of that city, was passing through the same, and had arrived there in the early part of the evening, and was intending to leave the city on a railroad train which usually left a short time after midnight. He, in company with three or four others, started a little after midnight to the railroad station. The night was quite dark and the street had few lights. They were traveling eastward on the north side of the street. In their way was an excavation in the sidewalk some twelve or fourteen feet wide, and about forty feet long, in front of a building in process of erection. This excavation was walled up to the sidewalk, and the pit was some seven feet lower than the surface of the sidewalk. The testimony tends to show that as late as nine o'clock of that night there was a barricade at the west end of this pit, consisting of a plank or joist placed across the sidewalk at a slight elevation, and of a fence board crossing the sidewalk at a greater elevation, nailed at the south side of the sidewalk to the west side of a post, and resting at its north end upon the plank, which rested on a box, and so adjusted at the north end that it lay against the west face of a brick wall, extending north on the face of the wall some inches, so that the board could not be pushed farther east without being broken or so far bent as to allow its north end to pass the face of the brick wall. The evidence also tends to show that when plaintiff and his companions passed that way shortly after midnight

384      CITY OF FREEPORT *v.* ISBELL.      [Sept. T.

Opinion of the Court.

this board had been removed from its position, and that its north end was down in the pit, and its south end rested on the south wall of the pit at its southwest corner. Plaintiff seems to have been a little in advance of his fellows, and fell into the pit and was injured.

The proceedings in the circuit court resulted in a verdict and judgment against the city for damages to the amount of $4500, and the city has appealed to this court.

The refusal of the court to postpone the trial at the request of appellant is assigned for error.

The affidavit in relation to want of preparation for trial by the city attorney presented matter peculiarly within the discretion of the circuit court, and the record fails to show that that discretion was not fairly exercised. The affidavit in relation to the absence of material witnesses failed to show due diligence. The mayor says he has made diligent efforts to ascertain the christian names of the witnesses "since the order remanding the cause was filed," but does not show when that diligence began, nor what those efforts were; nor does it show when he caused inquiries to be made as to the whereabouts of Bullis, one of the witnesses. For ought that is shown all these efforts at preparation may have been begun but a few days before the trial. Due diligence required action immediately after the time when notice was given of the filing of the remanding order of the Supreme Court, which was two weeks before the beginning of the term.

It is also insisted that a new trial ought to have been granted upon the ground that the proofs showed that the barrier which stood at the west end of the pit in question prior to the accident was as to sufficiency all that ordinary care required, and as that remained there until nine o'clock of that night, the city was not chargeable with negligence.

Appellant insists that if the board was removed by some unknown hand before the accident, the city had no notice; and if it remained there until the accident, it must have been misplaced by want of care in the plaintiff.

As, for another reason, the cause must be remanded for a new trial, we forbear to comment upon this question as to whether the barrier before and in the earlier part of the night in question was or was not such as ordinary care for the safety of passers required of the city. This is a question which ought to be left to the jury without any intimation of opinion by this court.

On the trial plaintiff produced evidence tending to show that he was suffering from an ailment known as "Bright's disease of the kidneys"—a disease said to be incurable—and that this was caused by the fall in question. Among other proofs on this point was. testimony as to certain peculiarities in plaintiff's urine. Plaintiff himself was a witness, and on cross-examination was asked whether at a former trial of this cause he had endeavored to show that he had any difficulty or trouble with his kidneys, or any peculiarity in his urine. To this question plaintiff by his counsel objected, and the court sustained the objection.

He was also asked whether he would furnish the defendant some of his urine for chemical examination. To this question the court sustained an objection.

He was then asked whether he refused to answer the last foregoing question, and the court sustained an objection to that question.

In these several rulings we think the circuit court erred. If it be true that upon a former trial plaintiff made no effort to show that any injury to his kidneys was caused by the fall in question, the defendant had a right to show that fact. Such a fact, unless explained, would be a proper fact for the consideration of the jury, in determining whether or not the claim of plaintiff in this regard was well founded, or was an after-thought and a fiction.

The evidence before the court tended to prove that a chemical and microscopic examination of the urine might determine with reasonable certainty whether the plaintiff had that complaint or not.

One of the doctors who testified for plaintiff had said he found albumen in his urine, and that that was one of the symptoms of the disease, but though a symptom, it was not sufficient to establish the fact of the disease; that other examinations, microscopic, etc., would be necessary to arrive at certainty on that subject.

Under these circumstances the defendant had a right to put before the jury the best evidence attainable on that question. If it was in the power of plaintiff to furnish the means of producing this best evidence, it was his duty to do so. And it was the duty of the court to permit his refusal to do so to be shown to the jury as a potent fact tending to show that the suggestion of a permanent injury to the kidneys was a fiction which a thorough examination would expose.

The amount of the damages, when considered in connection with the proofs, indicate that the jury may have given a larger amount of damages on account of this claim as to a permanent disease of the kidneys.

For the reasons expressed, the judgment must be reversed, and the cause remanded for a new trial.

*Judgment reversed.*